IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE KERYX
BIOPHARMACEUTICALS, INC.

Civil Action No. 18-1589-CFC

---

Ryan M. Ernst, O'KELLY ERNST & JOYCE, LLC, Wilmington, Delaware;
Alexandra B. Raymond, BRAGAR EAGEL & SQUIRE, P.C., New York, New
York; Richard A. Acocelli, Michael A. Rogovin, Kelly K. Moran, WEISSLAW
LLP, New York, New York

*Counsel for Plaintiffs*

David E. Ross, ROSS, ARONSTAM & MORITZ LLP, Wilmington, Delaware;
Peter L. Welsh, Christian Reigstad, ROPES & GRAY LLP, New York, New York
*Counsel for Defendants*

## MEMORANDUM OPINION

April 15, 2020
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Lead Plaintiffs Abraham Kiswani and John Andreula filed this putative class action on behalf of themselves and all other public stockholders of Keryx Biopharmaceuticals, Inc. against Keryx Biopharmaceuticals, Inc. (Keryx) and the members of Keryx's board of directors. This case is a consolidation of three related actions: *Corwin v. Keryx Biopharmaceuticals, Inc.*, 18-cv-1589-CFC; *Van Hulst v. Keryx Biopharmaceuticals, Inc.*, 18-cv-1656-CFC; and *Andreula v. Keryx Biopharmaceuticals, Inc.*, 18-cv-1721-CFC. *See* D.I. 13. The case arises out of the vote by Keryx stockholders in December 2018 to merge Keryx into a subsidiary of Akebia Therapeutics, Inc., leaving Akebia as the surviving parent entity.

Plaintiffs allege in their Amended Complaint that an October 2018 Schedule 14A Definitive Proxy Statement (the Proxy) issued by Keryx and Akebia to gain stockholder approval for the merger contained numerous material misleading statements and omissions. Plaintiffs allege that as a result of those misleading statements and omissions Defendants violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and U.S. Securities and Exchange Commission (SEC) Rule 14a-9, 17 C.F.R. § 240.14a-9, and that the individual defendants are also liable as "controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. §

78t(a).  D.I. 14 ¶¶ 1, 82, 86, 89, 94.  Defendants have moved for dismissal of the

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.I.

16.

## I.    BACKGROUND[1]

At the time of the merger, Akbeia was a development-stage

biopharmaceutical company whose lead investigational product candidate,

vadadustat, was being studied for the treatment of patients suffering from chronic

kidney disease.  Keryx was a commercial-stage biopharmaceutical company whose

sole product, Auryxia®, had been approved by the U.S. Food and Drug

Administration (FDA) to treat chronic kidney disease patients.  Keryx's Board of

Directors consisted of the seven named individual defendants in this case.

Approximately 21% of Keryx's stock was owned by the Baupost Group L.L.C.

D.I. 14 ¶ 68.  Baupost also held approximately $164.75 million of Keryx's

convertible notes which were due to mature in 2021.  D.I. 14 ¶ 2 n.2; D.I. 18-1 at

77.

---

[1] In considering Defendants' motion, I accept as true all factual allegations in the
Amended Complaint and view those facts in the light most favorable to Plaintiffs.
*See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).  I consider the
Proxy, D.I. 18-1, to be part of the Amended Complaint because it is incorporated
by reference and discussed throughout the Amended Complaint, Keryx attached
the Proxy to its motion to dismiss, the Proxy is central to Plaintiffs' claims, and the
parties do not dispute the Proxy's authenticity.  *See Santomenno ex rel. John
Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290–91 (3d Cir.
2014).

In June 2018, Keryx's Board announced that it had approved a merger agreement by which Akebia would acquire Keryx. D.I. 14 ¶ 68. Under the terms of the agreement, which was contingent on stockholder approval, Keryx would be merged into a wholly-owned subsidiary of Akebia, and Keryx stockholders would receive 0.37433 shares of Akebia for each Keryx share they owned. D.I. 14 ¶¶ 2, 68. As part of its announcement, the Board disclosed that Baupost had agreed to convert before the merger Baupost's outstanding Keryx convertible notes into Keryx stock and to vote its shares in support of the merger.

In October 2018, Keryx and Akebia jointly filed the Proxy with the SEC to solicit their respective stockholders' votes to approve the merger. D.I. 14 ¶ 8. The Proxy included among other things unaudited financial projections for the years 2018 through 2035 prepared by Keryx management for each of Keryx and Akebia on standalone bases. D.I. 18-1 at 103–07. The Proxy disclosed that Keryx had shared the projections with its financial advisor, MTS Securities; that MTS had considered the projections in forming an opinion that the merger consideration was fair; and that the Keryx Board's decision to approve the merger and recommend that stockholders approve it was based in part on MTS's fairness opinion. D.I. 18-1 at 96–97; 108.

Two sets of these financial projections lie at the heart of Plaintiffs' Amended Complaint: the Keryx Management Akebia Projections (the Akebia Projections)

3

and the Keryx Management Adjusted Akebia Projections (the Adjusted

Projections).  D.I. 14 ¶¶ 10–13, 71–73; D.I. 21 at 1–3; D.I. 18-1 at 103–07.  I will

refer to these two sets of projections collectively as "the Projections."

The Projections were set forth in a section of the Proxy titled "Certain Keryx

Unaudited Prospective Financial Information."  D.I. 18-1 at 103.  The first four

paragraphs of that section provide the following clear and explicit disclaimer:

> Keryx does not as a matter of course publicly disclose
> financial projections or forecasts as to future performance,
> revenues, earnings or other results given, among other
> things, the unpredictability, uncertainty and subjectivity of
> the underlying assumptions and estimates inherent in
> preparing financial projections and forecasts.  As a result,
> Keryx does not endorse unaudited prospective financial
> information as a reliable indication of future results.
> Moreover, Keryx's internally prepared unaudited financial
> projections presented below were based on estimates,
> assumptions and judgments made by Keryx management
> at the respective times of their preparation and speak only
> as of such times.  Except as required by law, Keryx has no
> obligation to update the unaudited financial projections
> included in this section.  It has not done so and does not
> intend to do so.
>
> The unaudited financial projections concerning each of
> Keryx and Akebia on a standalone basis, without giving
> effect to the Merger, . . . were prepared by Keryx
> management and made available, except as otherwise
> described below, to the Keryx Board in its review and
> evaluation of the Merger and to Keryx's financial advisor
> (see "—*Opinion of Keryx's Financial Advisor – MTS
> Securities LLC*" beginning on page 95 of this joint proxy
> statement/prospectus).   These  unaudited  financial
> projections are not being included in this joint proxy
> statement/prospectus to influence the voting decision of

any Keryx shareholder or Akebia shareholder with respect to the Merger, but instead because these unaudited financial projections, in whole or in part, were provided, or formed the basis of what was provided, to the Keryx Board, Akebia and Keryx's and Akebia's financial advisors in connection with their evaluation of Merger as described herein.

You should note that the unaudited financial projections set forth below constitute forward-looking statements. Please see the section entitled *"Cautionary Statement Regarding Forward-Looking Statements"* beginning on page 51 of this joint proxy statement/prospectus for more information. You should also note that the unaudited financial projections were not prepared with a view toward public disclosure or with a view toward complying with GAAP, the published guidelines of the SEC or the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information. The information set forth in th[is] section . . . was prepared utilizing Keryx's historical internal accounting policies and forecast approach and does not give effect to the adoption of any new accounting pronouncements. The unaudited prospective financial information included in this section has been prepared by, and is the responsibility of, Keryx management. Neither Keryx's nor Akebia's respective independent registered public accountants, nor any other independent accountants or financial advisors, have compiled or performed any procedures with respect to the unaudited financial projections set forth below, nor have they expressed any opinion, judgment or any other form of assurance on such information or its achievability, and none assumes any responsibility for, and each disclaims any association with, the unaudited financial projections. The reports of the independent registered public accounting firms incorporated by reference in this joint proxy statement/prospectus relate to historical financial statements. The unaudited prospective financial information of Keryx does not extend to any prospective

financial information or the estimated synergies and should not be seen to do so.

The unaudited financial projections set forth below should not be relied upon as necessarily indicative of actual future results, and readers of this joint proxy statement/prospectus are cautioned not to place undue reliance on such unaudited financial projections. Furthermore, since the unaudited financial projections cover multiple years, such information by its nature becomes less predictive with each successive year. Although the unaudited financial projections are presented with numerical specificity, the unaudited financial projections reflect assumptions, estimates and judgments that are inherently uncertain and, although considered reasonable by Keryx management as of the date of their use in preparing the unaudited financial projections, are subject to significant business, economic and competitive risks and uncertainties that could cause actual results to differ materially from those contained in the unaudited financial projections set forth below, including, among others, risks and uncertainties due to general business, economic, regulatory, market and financial conditions, as well as changes in Keryx's or Akebia's respective businesses, financial condition or results of operations, and other risks.

D.I. 18-1 at 103–04.

A special meeting of the Keryx shareholders to vote on the merger with Akebia was held on December 11, 2018. D.I. 14 ¶ 15. A majority of the Keryx shareholders voted to approve the merger, and the merger closed the next day. D.I. 14 ¶ 15.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

### B.   Sections 14(a) and 20(a) of the Exchange Act

Section 14(a) of the Exchange Act prohibits soliciting a shareholder's vote

"in contravention of such rules and regulations as the Commission may prescribe."

15 U.S.C. § 78n(a)(1).  Securities and Exchange Commission Rule 14a-9

implements §14(a).  Rule 14a-9 prohibits the solicitation of a shareholder's vote

through a communication "containing any statement which, at the time and in the

light of the circumstances under which it is made, is false or misleading with

respect to any material fact, or which omits to state any material fact necessary in

order to make the statements therein not false or misleading."  17 C.F.R. §240.14a-

9(a).  Thus, to establish a violation of §14(a), the plaintiff must prove that "(1) a

proxy statement contained a material misrepresentation or omission which (2)

caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the

particular defect in the solicitation materials, was an essential link in the

accomplishment of the transaction."  *Tracinda Corp. v. DaimlerChrysler AG*, 502

F.3d 212, 228 (3d Cir. 2007) (quotation marks and citation omitted).

The Private Securities Litigation Reform Act (PSLRA) requires a plaintiff

alleging a claim under § 14(a) to "specify [in the complaint] each statement alleged

to have been misleading, the reason or reasons why the statement is misleading,

and, if an allegation regarding the statement or omission is made on information

and belief, . . . state with particularity all facts on which that belief is formed."  15

U.S.C. § 78u–4(b)(1).

To establish a violation of § 20(a) of the Exchange Act, a plaintiff must prove that a third party under the defendant's control violated the Exchange Act. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013).

## III.   ANALYSIS

### A.   The § 14(a) Claim

Plaintiffs' § 14(a) claim is twofold.  First, Plaintiffs allege that "[t]he Proxy misled the Company's stockholders as to the reasonableness and reliability of the Keryx Management Akebia Projections and the Keryx Management Adjusted Akebia Projections."  D.I. 14 ¶ 71; *see also* D.I. 14 ¶ 78 (alleging Adjusted Projections and MTS's fairness opinion based on those projections were "based upon incomplete and misleading information").[2]  Second, they allege that the Proxy failed to provide Keryx stockholders with "all material information" about the pre-merger negotiations regarding Baupost's conversion of its convertible notes

_____

[2] In their briefing, Plaintiffs also challenge the Proxy's disclosure that the fairness opinion was "one of many factors taken into consideration" by Defendants in making the determination to approve the merger.  D.I. 21 at 13.  Plaintiffs contend that this disclosure implicitly represented that the fairness opinion was a "positive reason" for the Board's decision to approve the merger, and that this implicit representation was false because "Defendants did not genuinely believe that the fairness opinion was a factor that supported their recommendation, because they knew that the fairness opinion was predicated in part on the inflated Adjusted Projections."  *Id.* at 13.  This allegation, therefore, rises and falls, with Plaintiffs' allegations about the Projections.

into Keryx stock. D.I. 14 ¶ 79. Defendants argue that none of the challenged

representations or omissions are false or misleading.

### 1.    The Financial Projections

To the extent Plaintiffs' § 14(a) claim is based on the reasonableness and

reliability of the Projections, it is foreclosed by *OFI Asset Management v. Cooper*

*Tire & Rubber*, 834 F.3d 481, 500–01 (3d Cir. 2016), because the Proxy clearly

and expressly disclaimed the accuracy of the Projections.  In *OFI*, the Third Circuit

held that when a proxy warns stockholders not to rely on disclosed financial

projections and disclaims that the projections constitute "an indication that [the

proxy's issuer and other relevant parties] considered or consider the projections to

be necessarily predictive of actual future events," the financial projections are not

"statements of fact" and cannot serve as actionable false statements under § 14(a).

*Id.* at 501.  In this case, the Proxy explicitly stated that the Keryx Board did "not

endorse" the Projections "as a reliable indication of future results"; that the

projections "should not be relied upon as necessarily indicative of actual future

results"; that "readers of this joint proxy statement/prospectus are cautioned not to

place undue reliance on" the projections; and that Keryx was providing the

projections "not . . . to influence the [stockholders'] voting decision" "but instead

because the . . . projections, in whole or in part, were provided, or formed the basis

of what was provided, to the Keryx Board, Akebia[,] and Keryx's and Akebia's

10

financial advisors in connection with their evaluation of [the] Merger as described herein." D.I. 18-1 at 103. The Proxy also explicitly stated that the Projections "were based on estimates, assumptions and judgments made by Keryx management at the respective times of their preparation and speak only as of such times" and that Keryx "ha[d] not [updated the Projections] and d[id] not intend to do so." D.I. 18-1 at 103.

The Projections cannot form the basis of a § 14(a) claim for the additional reason that they fall within the PSLRA's "safe harbor" for forward-looking statements. *See* 15 U.S.C. § 78u-5. The PSLRA's safe harbor applies to forward-looking statements that "are (1) identified as such, and accompanied by meaningful cautionary statements; or (2) immaterial; or (3) made without actual knowledge that the statement was false or misleading." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 278–79 (3d Cir. 2010). The Projections were expressly identified as "forward-looking statements" in the Proxy, D.I. 18-1 at 103, and were accompanied by a three-page section of the Proxy titled "CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS," *id.* at 63–65 (capitalization in the original). That section provided a substantive, detailed, and tailored warning to stockholders to view the Projections with caution. It identified among other things 22 "important factors" specifically tied to Keryx, Akebia, and the proposed merger, that "could cause actual results to differ

materially from Akebia's and Keryx's plans, estimates or expectations" on which the projections were based. *Id.* at 63. Accordingly, the Projections are immunized from §14(a) liability by the PSLRA's safe harbor provision. *OFI*, 834 F.3d at 491 (holding that "meaningful cautionary statements" immunize forward-looking statements from liability under the PSLRA's safe harbor if the cautionary statements are "substantive and tailored to the specific future projections, estimates or opinions in the [documents] which the plaintiffs challenge.") (quotation marks and citation omitted) (alterations in original).

Notwithstanding the language of the Amended Complaint, Plaintiffs attempt in their briefing to avoid *OFI* and the PSLRA's safe harbor by recharacterizing their claim as a "challenge [to] the projections as a statement of opinion, not fact." D.I. 21 at 9. They assert in their opposition brief that "the Proxy represented that [the Projections] 'reflected the best currently available estimates and judgments of'" Defendants, D.I. 21 at 2 (quoting the Proxy at 96); and they maintain in a supplemental letter brief that this representation falsely conveyed that Defendants held this belief "*as of the date of the fairness opinion*, i.e., June 27, 2018[,]" D.I. 24 at 1 (emphasis in original). Plaintiffs allege that Defendants could not have held that belief on June 27, 2018 because Defendants learned on June 15, 2018 information from Akebia that "rendered" the Projections "vastly overstated and obsolete." D.I. 24 at 1–2.

As an initial matter, the Proxy did not expressly disclose that the Projections "reflected the best currently available estimates and judgments of" Defendants. The Proxy actually represented that "[i]n arriving at its opinion, *MTS Securities assumed* . . . that [the Projections] . . . reflected the best currently available estimates and judgments of Keryx management[.]" D.I. 18-1 at 108 (emphasis added). This representation is a statement of fact, not opinion. It is a true statement of fact if MTS assumed at the time it formed its fairness opinion that the Projections reflected the best then-available estimates and judgments of Keryx's management; it is a false statement of fact if MTS did not make that assumption when it formed its opinion. Plaintiffs do not allege that MTS did not assume that the Projections reflected the best currently available estimates and judgments of Keryx management.

To the extent Plaintiffs assert that the challenged representation implicitly disclosed that Defendants believed as of June 27, 2018 that the Projections reflected their best available estimates and judgments, that implicit disclosure cannot be squared with the language of the Proxy and the Amended Complaint. The Proxy expressly stated that the projections it disclosed were based on estimates "at the respective times of their preparation" and "speak only as of such times." D.I. 18-1 at 103. The Amended Complaint alleges that the Projections were prepared in May 2018 and discussed at a Special Committee meeting on May

13

29, 2018.  D.I. 14 ¶¶ 50, 52.  Thus, the challenged representation implicitly

discloses at most that Defendants believed before May 30, 2019 that the

projections reflected their then-best available estimates and judgments.  Plaintiffs

alleged no facts from which it can be plausibly inferred that Defendants did not

hold that belief before May 30, 2018.  The fact that on June 15, 2018—two weeks

after May 29, 2018—Defendants learned information that "rendered" the

Projections "overstated and obsolete" does not provide a basis to plausibly infer

that Defendants did not believe as of May 29, 2018 that the Projections reflected

their best estimates and judgments.

Plaintiffs also argue that Defendants could not have genuinely believed that

the Projections reflected their best currently available estimates and judgments

because the Akebia Projections and Adjusted Projections "revealed two drastically

different pictures of Akebia's future prospects."  D.I. 21 at 2.  Plaintiffs, however,

cannot plead falsity simply because different projections based on different

assumptions were different, particularly when, as Plaintiffs themselves

acknowledge, the different projections and assumptions were disclosed in the

Proxy.

Accordingly, Plaintiffs' allegations regarding the Projections and

Defendants' belief about the Projections do not state a cognizable claim for relief

under § 14(a).

## 2.   The Baupost Disclosures

Although Plaintiffs complain that the "Proxy failed to provide Keryx stockholders with all material information about the negotiations" that led to Baupost's conversion of its notes into Keryx stock, D.I. 14 ¶¶ 14, 79–80, they do not allege that this omission rendered a statement in the Proxy false or misleading. Plaintiffs' failure in this regard is fatal to their claim. There is no duty to disclose all material information under § 14(a). "Omissions constitute violations of [§ 14(a)] only if they are both material and make other statements false or misleading. *Ash v. Brunswick Corp.*, 405 F. Supp. 234, 245 (D. Del. 1975).

Accordingly, Plaintiffs have failed to adequately plead a violation of § 14(a) based on the Proxy's alleged omissions concerning Baupost.

## B.   Section 20(a) of the Securities Exchange Act

Count II of the Amended Complaint is against the members of the Keryx Board for violations of § 20(a) of the Securities Exchange Act. "Section 20(a) imposes liability on controlling persons who aid and abet violations of the [Securities Exchange Act.]" *In re Aetna*, 617 F.3d at 285. Because Plaintiffs' § 20(a) claims are predicated on their § 14(a) claims, the § 20(a) claims fail for the same reasons Plaintiffs' § 14(a) claims are not cognizable.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint fails to state claims under §§ 14(a) and 20(a), and I will therefore grant Defendants' motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.